## UNITED STATES DISTRICT COURT OF
## THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BROOKLYN PRESLEY | : | No. |
| C/O FRIEDMAN SCHUMAN | : | |
| 275 Commerce Drive, Suite 210 | : | |
| Fort Washington, PA 19034 | : | |
|  | : | |
| and | : | |
|  | : | |
| ANTHONY AND KRISTEN PRESLEY | : | |
| C/O FRIEDMAN SCHUMAN | : | |
| 275 Commerce Drive, Suite 210 | : | |
| Fort Washington, PA 19034 | : | |
|  | : | |
| *Plaintiffs* | : | |
|  | : | |
| v. | : | |
|  | : | JURY TRIAL DEMANDED |
| CHAMBERSBURG AREA | : | |
| SCHOOL DISTRICT | : | |
| 435 Stanley Avenue | : | |
| Chambersburg, PA 17201 | : | |
|  | : | |
| and | : | |
|  | : | |
| DION BETTS, Superintendent | : | |
| 435 Stanley Avenue | : | |
| Chambersburg, PA 17201 | : | |
|  | : | |
| and | : | |
|  | : | |
| MARK LONG, Assistant Superintendent | : | |
| 435 Stanley Avenue | : | |
| Chambersburg, PA 17201 | : | |
|  | : | |
| and | : | |
|  | : | |
| JANILYN ELIAS, Assistant Superintendent | : | |
| 435 Stanley Avenue | : | |
| Chambersburg, PA 17201 | : | |
|  | : | |
| and | : | |

```
                                        :
KURT WIDMANN, Assistant Superintendent:
435 Stanley Avenue                      :
Chambersburg, PA 17201                  :
                                        :
        and                             :
                                        :
BENJAMIN A. DURAN-TOBIAS                :
C/O FRANKLIN COUNTY JAIL                :
1804 Opportunity Avenue                 :
Chambersburg, PA, 17201-3091            :
                                        :
        Defendants                      :
```
_____

## A.    <u>NATURE OF ACTION</u>

1.      This is an action for damages and other relief brought on behalf of Brooklyn Presley ("Ms. Presley").

2.      This action centers upon inappropriate and abusive emotional/physical/sexual contact perpetrated against Ms. Presley by Benjamin Duran-Tobias during the time he was a high school teacher at Chambersburg High School within the Chambersburg Area School District and the failures/culture of disregard on the part of the District and its officials for lacking adequate policies and procedures with respect to the protection of its students, particularly Ms. Presley.

3.      Ms. Presley seek redress pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. §§1681-88 (hereinafter "Title IX"), as well as certain provisions of the common law of Pennsylvania.

## B.    <u>PARTIES</u>

4.      Plaintiff, Brooklyn Presley, is an adult individual who resides in Chambersburg, PA.  X

2

5.      Plaintiffs, Anthony and Kristen Presley, are adult individuals and the parents and natural guardians of Brooklyn Presley, who both reside in Chambersburg, PA.

6.      Defendant, Chambersburg Area School District, is an entity organized under the law of Pennsylvania, operating several public schools within a designated geographical area in Franklin County.

7.      At all relevant times hereto, Defendant, Chambersburg Area School District, adopted, oversaw, and/or enforced rules and regulations for management of school affairs and the conduct of employees and students within the District.

8.      At all relevant times hereto, Defendant, Chambersburg Area School District, acted individually and by and through its duly authorized actual and/or apparent agents, servants, and employees, in particular, its superintendents, assistant superintendents, principals, vice principals, school board, teachers, staff, and supervisors, acting within the course and scope of their actual and/or apparent agency and/or employment.

9.      Defendant, Chambersburg Area School District, is directly and vicariously liable to Ms. Presley for injuries sustained as a result of the negligence, reckless misconduct, and other tortious conduct as described further herein, of persons or entities whose conduct was under their control or right to control and which conduct, actions, and/or inactions directly and proximately caused all of Plaintiffs' injuries.

10.      Defendant, Dion Betts (hereinafter "Betts"), upon information and belief, was, at all times material hereto, the Superintendent of the District, responsible for the promulgation, implementation and maintenance of the District policies regarding student, faculty, and administrative procedures, including but not limited to procedures relating to the prevention and reporting of the abuse of District Students.

11.     Defendant, Mark Long (hereinafter "Long"), was, upon information and belief, at all times material hereto, an Assistant Superintendent of the District.  As such, he was the District officer responsible for selecting and placing staff, oversight of student services working with school administration to achieve instructional and safety goals, evaluating educational programs, and utilizing best practices with student impact in mind.

12.     Defendant, Kurt Widmann (hereinafter "Widmann"), was, upon information and belief, at all times material hereto, an Assistant Superintendent of the District.  As such, he was the District officer responsible for selecting and placing staff, oversight of student services working with school administration to achieve instructional and safety goals, evaluating educational programs, and utilizing best practices with student impact in mind.

13.     Defendant, Janilyn Elias (hereinafter "Elias"), was, upon information and belief, at all times material hereto, an Assistant Superintendent of the District.  As such, she was the District officer responsible for selecting and placing staff, oversight of student services working with school administration to achieve instructional and safety goals, evaluating educational programs, and utilizing best practices with student impact in mind.

14.     Defendants, Chambersburg Area School District, Dion Betts, Mark Long, Kurt Widmann, and Janilyn Elias will collectively be referred to as "the District".

15.     Defendant, Benjamin A. Duran-Tobias (hereinafter "Duran-Tobias"), at all times material to this Complaint, was employed by the district as a high school science teacher and is currently incarcerated at Franklin County Jail.

16.     At all times material hereto, Duran-Tobias was the science teacher of Brooklyn Presley at Chambersburg Area High School. X

C.     **JURISDICTION**

17.     Jurisdiction is vested in this Court due to the federal questions presented by Plaintiffs' statutory claims pursuant to 28 U.S.C. § 1331.   This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

18.     At all times material hereto, all defendants acted pursuant to or under the color of state law as those terms are defined under 42 U.S.C. § 1983.

19.     At all times material hereto, the District received federal funds for the provision of educational services and programs within the District.

D.     **VENUE**

20.     Venue lies properly in this judicial district, as defendants may be located therein, and the events and conduct giving rise to the Complaint occurred therein.

E.     **MATERIAL FACTS**

21.     At all times material hereto, Brooklyn Presley was a minor.

22.     At all times material hereto, Duran-Tobias was Brooklyn Presley's chemistry teacher at Chambersburg Area High School.

23.     At all times material hereto, Duran-Tobias was acting in the course and scope of his employment as a teacher and staff member at Chambersburg Area High School when he openly coerced, groomed, manipulated, molested, and sexually assaulted Ms. Presley

24.     Beginning in approximately October of 2021 and continuing until April 2022, Duran-Tobias engaged in inappropriate physical/sexual contact with Ms. Presley.

25.     Duran-Tobias's victimization of Ms. Presley began in October of 2021 when he returned from paternity leave.

26.     At the beginning of the 2021 school year, Ms. Presley was assigned to a seat within Duran-Tobias's classroom in a corner far from his desk.

27.     Following his return from paternity leave, Duran-Tobias inexplicably moved Ms. Presley's seat directly next to his desk.

28.     At around the same time, Duran-Tobias began asking Ms. Presley personal questions about her life, including asking her whether she had "matured quicker", which she understood to mean whether she had begun menstruating at an early age.

29.     Duran-Tobias also began leaving notes to Ms. Presley on her desk complimenting her physical appearance.

30.     Duran-Tobias also began asking Ms. Presley to come to his classroom outside of her chemistry class period.

31.     Duran-Tobias also began to request that Ms. Presley spend her study hall period each day in his classroom, where he would write notes to Ms. Presley.

32.     Duran-Tobias further began contacting Ms. Presley's prep period proctor to ask that the teacher send Ms. Presley to his classroom during her prep period.

33.     Beginning around January and February of 2022, Duran-Tobias became increasingly more inappropriate with conversation, including, *inter alia*, asking whether Ms. Presley ever wore tight, revealing clothing, offering his opinion on which prom dress she should select, and stating that he had emailed her because he "missed [her]".

34.     Also in January or February of 2022, Duran-Tobias began to ask Ms. Presley to stay after school with him in his classroom, which occurred approximately two (2) to three (3) times per week.

35.     On one (1) occasion during class, a fellow student made a comment aloud that Ms. Presley had "big butt".

36.     In response, Duran-Tobias wrote Ms. Presley a note stating that the student was "not wrong", expressing agreement with the student's statement.

37.     On another occasion, Duran-Tobias requested that Ms. Presley visit him in his classroom.

38.     When Ms. Presley arrived, he told her that he "missed" her and that she "should have come sooner."

39.     On another occasion, he requested to see a photograph of Ms. Presley in her prom dress.

40.     When Ms. Presley complied, Duran-Tobias wrote her a note commenting on her "full figure" and how good she looked in the prom dress.

41.     He further requested that Ms. Presley show him more photographs of her body.

42.     On another occasion, Ms. Presley told Duran-Tobias that he was being mean.

43.     In response, Duran-Tobias invited her to his classroom during sixth period, a period where they would be alone in the classroom, so that he could "be nice", which Ms. Presley understood to mean that they could engage in sexual activity.

44.     On March 1, 2022, Duran-Tobias wrote Ms. Presley a note asking if she had a crush on him and later wrote a note stating that his classroom had a back room if she wanted to "do anything", which Ms. Presley perceived as meaning if she wanted engage in sexual activity with Duran-Tobias.

45.     Ms. Presley returned to Duran-Tobias's classroom later on March 1, 2022 at which time Duran-Tobias gave Ms. Presley a note detailing sexually explicit acts which he

wished to perform with her, including, inter alia, penetrating her with his fingers, rubbing her genitals, kissing her, performing oral sex on her, and engaging in sexual intercourse.

46.     He further instructed Ms. Presley to stay in his room following the end of the period.

47.     After the class left, Duran-Tobias instructed Ms. Presley to erase the class board.

48.     When Ms. Presley complied, Duran-Tobias approached her from behind and grabbed her buttocks.

49.     Duran-Tobias approached Ms. Presley again and grabbed her buttocks a second time, touched her waist, and fondled her breasts.

50.     Ms. Presley froze and was fearful due to his actions.

51.     Once Duran-Tobias stopped his sexual assault, Ms. Presley went to her desk.

52.     Duran-Tobias followed Ms. Presley there and touched her breasts under her shirt, placed his hands inside of her pants, and rubbed her vagina for approximately one (1) minute.

53.     He then pulled Ms. Presley onto his lap and manually moved her hips to simulate intercourse while stating "God, I want to fuck you."

54.     Duran-Tobias then grabbed Ms. Presley's hand and rubbed it on his genitals.

55.     Once Duran-Tobias let go of her hand, Ms. Presley quickly grabbed her personal belongings and escaped her attacker.

56.     Following the sexual assault of March 1, 2022, Duran-Tobias abruptly changed his behavior towards Ms. Presley.

57.     For example, Duran-Tobias stopped sending Ms. Presley notes, speaking to her during class, and avoided using his desk to distance himself physically from Ms. Presley.

58.     Upon information and belief, this was a further strategy of emotional and psychological abuse to isolate Ms. Presley.

59.     Duran-Tobias's extreme shift in behavior towards Ms. Presley caused her extreme emotional distress and confusion.

60.     Ms. Presley approached Duran-Tobias and asked him why he was no longer speaking to her.

61.     On March 8, 2022, Duran-Tobias requested that Ms. Presley come to his classroom after school and informed her that he was pushing her away so that their relationship would not be suspicious and so that they could continue communicating.

62.     Also on March 8, 2022, during seventh period, Duran-Tobias passed Ms. Presley a note asking her to promise that she did not tell anyone about what had happened on March 1st.

63.     Also on March 8, 2022, Duran-Tobias asked Ms. Presley what type of bra she was wearing and asked to see it.

64.     Ms. Presley pulled up her shirt at which point Duran-Tobias grabbed her buttocks, pulled her onto his lap and moved her hips while on top of him.

65.     Duran-Tobias then went to the doorway, checked the hallway, and told Ms. Presley that he wanted to "do something",

66.     Duran-Tobias then approached Ms. Presley, lifted her top and bra, and sucked on her nipples for approximately thirty (30) seconds.

67.     Duran-Tobias then approached her again, grabbed her buttocks, rubbed her vagina inside her clothing, told her that he wished he could "put it in", meaning his penis, and then proceeded to digitally penetrate her vagina.

68.     Following this sexual assault, Duran-Tobias made Ms. Presley promise that she would not tell anyone about what occurred.

69.     On March 30, 2022, the District received a Safe2Say Something report from an anonymous source the detailing inappropriate comments and actions by Duran-Tobias toward multiple female students during the 2021-2022 school year, including Ms. Presley.

70.     On April 7, 2022, a ChildLine report regarding Ms. Presley was made.

71.     On April 7, 2022, information regarding the sexual assault and harassment was reported to the District police.

72.     On April 8, 2022, Duran-Tobias was arrested and charged with two (2) counts of aggravated indecent assault – forcible compulsion, two (2) counts of intercourse/sexual contact with a student, one (1) count of corruption of minors, one (1) count of unlawful contact with a minor – sexual offenses, and one (1) count of indecent assault without consent of another.

73.     On April 22, 2022, Long filed a "Discrimination/Sexual Harassment/Bullying/Mazing/Dating Violence/Retaliation Report Form", an informal report of the sexual assault under Title IX.

74.     On April 22, 2022, the Title IX Coordinator filed a Title IX Complaint on behalf of Ms. Presley.

75.     The Title IX Complaint detailed that Duran-Tobias had also victimized other minor female students at the District's high school, including R.B., M.S., and J.S.

76.     David Walker, Esq. ("Attorney Walker") soon thereafter conducted an independent investigation of the allegations contained in the Title IX Complaint.

10

77.     As part of his investigation, Attorney Walker conducted interviews with Ms. Presley and multiple witnesses, and gathered evidence including Safe2Say Something reports, ChildLine reports, class seating charts, and other pertinent documents.

78.     N.K., a student at Chambersburg Area High School, was interviewed during the course of the investigation.

79.      N.K. confirmed that Duran-Tobias altered the seating chart so that his desk was surrounded by female students.  She further confirmed that Ms. Presley was seated next to Duran-Tobias's desk and that Ms. Presley informed her that Duran-Tobias made her sit on his lap and digitally penetrated her.

80.     N.K further confirmed that Duran-Tobias held another student after class to speak about mental health, but ultimately made inappropriate comments about the other student's body.

81.     Attorney Walker found N.K. to be a credible witness.

82.     A.S., a student at Chambersburg Area High School, was also interviewed during the course of the investigation.

83.     A.S. confirmed that Duran-Tobias moved Ms. Presley's desk closer to his desk around October of 2021.

84.     She further confirmed that Duran-Tobias would pass Ms. Presley notes during class, some of which Ms. Presley showed A.S., which included comments about Ms. Presley's prom dress, drawings, and Duran-Tobias missing Ms. Presley.

85.     A.S. further confirmed that Ms. Presley shared with her that Duran-Tobias had touched her on two (2) separate occasions after school, including digitally penetrating her, touching her breasts, forcing her to grab his penis, and forcing her to give him a lap dance.

86.     A.S. further confirmed that Ms. Presley informed her that Duran-Tobias told Ms. Presley that she could not let anyone know what had happened.

87.     A.S. also informed the investigator that Duran-Tobias used grooming tactics with other female students at the school.  When discussing her own experiences, she shared that Duran-Tobias provided her with test answers, complimented her style, gave her notes on holidays, and got her donuts.

88.     Attorney Walker found A.S. to be a credible witness.

89.     T.M., a student at Chambersburg Area High School, was also interviewed during the course of the investigation.

90.     T.M. confirmed that Ms. Presley informed her that Duran-Tobias touched her inappropriately on her breasts and made inappropriate comments to her.

91.     T.M. informed the investigator that Ms. Presley told her that on another occasion, Duran-Tobias made her turn off the SmartBoard and that he was looking at her body.

92.     T.M. further informed the investigator that she witnessed Duran-Tobias pass notes to Ms. Presley during their sixth period class.

93.     Attorney Walker found T.M. to be a credible witness.

94.     J.S., a student at Chambersburg Area High School, was interviewed during the course of the investigation.

95.     J.S. confirmed that she witnessed Duran-Tobias pass Ms. Presley notes during class.

96.     J.S. informed the investigator that Ms. Presley told her that she was assaulted by Duran-Tobias and that he grabbed Ms. Presley's butt.

97.     Attorney Walker found J.S. to be a credible witness.

98.     A.L., a student at Chambersburg Area High School, was also interviewed during the course of the investigation.

99.     A.L. informed the investigator that Ms. Presley would come to her fifth period class taught by Duran-Tobias every day even though Ms. Presley was not a member of the class and would sit right next to Duran-Tobias's desk.

100.    A.L. further stated that she witnessed Duran-Tobias passing notes to Ms. Presley and that they would speak often.

101.    Attorney Walker found A.L. to be a credible witness.

102.    S.N., a student at Chambersburg Area High School, was also interviewed during the course of the investigation.

103.    S.N. stated that Ms. Presley told her that she was assaulted by Duran-Tobias.

104.    S.N. informed the investigator that Ms. Presley would come to her fifth period class taught by Duran-Tobias every day while Ms. Presley had study hall.

105.    S.N. further stated that she witnessed Duran-Tobias passing Ms. Presley notes during class.

106.    On one (1) occasion, S.N. attempted to grab one of the notes in a joking manner, but Duran-Tobias became angry and defensive.

107.    S.N. noted that following this exchange, Duran-Tobias attempted to be more discreet when passing the notes.

108.    Attorney Walker found S.N. to be a credible witness.

109.    Matthew Maple ("Maple"), a science teacher at Chambersburg Area High School, was also interviewed during the course of the investigation.

110.    Maple's classroom was adjacent to Duran-Tobias's classroom.

13

111.    Maple confirmed that Ms. Presley would stay in Duran-Tobias's room after school to talk, and that they were typically alone during that period of time.

112.    Maple believed this occurred every other week until Duran-Tobias was placed on administrative leave.

113.    Maple further stated that Ms. Presley would leave her sports bag in Duran-Tobias's classroom in the morning, which Maple believed to be odd since she would not be at his class at the end of the day.

114.    Maple informed the investigator that he also saw Ms. Presley at Duran-Tobias's classroom at lunch.

115.    Maple further reported seeing the notes that Duran-Tobias kept from students.

116.    Maple further stated that when seeing the grades for Duran-Tobias's classroom, he believed that Duran-Tobias may have inflated the female students' grades as compared to the male students.

117.    Maple further noticed that Duran-Tobias's seating chart appeared to segregate the female students from the male students, with female students seated round Duran-Tobias's desk while the male students were far away.

118.    Attorney Walker found Maple to be a credible witness.

119.    Following his investigation, the Title IX Coordinator made numerous findings, including, inter alia, the following:

        a.    Duran-Tobias's 2021-2022 class seating charts confirm that female students were positioned around his desk, including Ms. Presley;

        b.    The seat directly in front of Duran-Tobias's desk was left open for Ms. Presley to utilize during other class periods;

14

    c.      Duran-Tobias's emails demonstrate his tendency to pull Ms. Presley out of other class periods as well as Ms. Presley's tendency to go to his classroom during fifth period study hall; and

    d.      Ms. Presley's interview and statements were corroborated by the witness interviews.

120.    On November 30, 2022, Duran-Tobias pled guilty to institutional sexual assault in school, indecent assault, and corruption of minors and was sentenced to a period of incarceration.

121.    During Duran-Tobias's November 30, 2022 hearing, he admitted to having "inappropriate conversations and physical contact" with Ms. Presley.

122.    He further admitted to "touch[ing] [Ms. Presley] under her shirt" and touching her vagina.

123.    As a result of the District's failures, Duran-Tobias's predatory nature was left unchecked and he was free to prey upon vulnerable minor students at Chambersburg Area High School.

124.    Duran Tobias's conduct included inappropriate personal discussions with Ms. Presley that sought to render her dependent on him for emotional support.

125.    Duran-Tobias pursued additional contact with Ms. Presley through patterns of manipulation and emotional abuse, all under the guise of being her "teacher".

126.    The culmination of Duran-Tobias's abuse of Ms. Presley occurred on or about March 1, 2022 and March 8, 2022 when he physically and sexually molested and assaulted Ms. Presley.

127.    Duran-Tobias's sexual molestation of Ms. Presley occurred on school property.

128.    As a result of the outrageously shocking conduct of the Defendants, Ms. Presley has sustained severe harm, including but not limited to physical abuse, isolation, sleep

disturbances, panic attacks, sexual molestation, severe emotional distress and anxiety, relationship difficulties, depression, post-traumatic stress disorder and social withdrawal.

129.    As a result of these harms, Ms. Presley has suffered irreparably and will continue to suffer permanently, necessitating therapeutic medical and/or psychological treatments, which are likely to persist throughout her lifetime.

130.    As a further result of the abuse she has suffered, Ms. Presley has suffered a significant interference with her ability to learn and otherwise enjoy the benefits of the education and educational services of the District, all to her permanent detriment.

**F.    CAUSES OF ACTION**

### COUNT I - PURSUANT TO 42 U.S.C. § 1983
### PLAINTIFF, BROOKLYN PRESLEY v. DURAN-TOBIAS

131.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

132.    Taking advantage of his capacity as Ms. Presley's teacher, as the attendant authority created under state law, Duran-Tobias, through the conduct alleged heretofore, violated Ms. Presley's civil and constitutional rights under the Fourth and Fourteenth Amendments of the Constitution of the United States, including her rights to security of person, due process, and equal protection.

133.    Ms. Presley suffered the harms and damages alleged hereinabove as a result of the Constitutional violations committed by Duran-Tobias.

### COUNT II – MONELL PURSUANT TO 42 U.S.C. §1983
### PLAINTIFF, BROOKLYN PRESLEY v. THE DISTRICT AND DURAN-TOBIAS

134.     Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

135.    The abusive and illegal conduct of Duran-Tobias, in violation of Ms. Presley's Constitutional and federally protected statutory rights, resulted from acts and omissions, policies,

customs and practices maintained and endorsed by the District and Duran-Tobias, who had

policymaking authority, including:

a.    failing to train district personnel regarding the proper investigation of child abuse allegations;

b.    systemically failing to conduct, or to ensure that proper and thorough investigating of child abuse allegations were conducted;

c.    systemically failing to report, or to ensure that credible allegations of child abuse were reported to the proper agencies and authorities;

d.    systemically failing to ensure District compliance with Pennsylvania's Child Protective Services Law;

e.    failing to implement or maintain procedures to screen teacher applicants for past allegations and/or incidents of child abuse;

f.    failing to employ policies that screen out and/or prevent retention of predators such as Duran-Tobias;

g.    failing to terminate or otherwise discipline teachers, including but not limited to Duran-Tobias, against whom credible allegations of child abuse were made, or are known to have engaged in a pattern of abusing or harassing female students;

h.    promulgating and/or maintaining policies and/or customs, which resulted in systemic and repeated violations of Ms. Presley's Constitutional rights; and

i.    deliberate indifference to complaints of female students regarding abusive conduct by teachers, including but not limited to Duran-Tobias.

## COUNT III – STATE CREATED DANGER - PURSUANT TO 42 U.S.C. § 1983 PLAINTIFF, BROOKLYN PRESLEY v. THE DISTRICT

136.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

137.    As a foreseeable result of the actions, inactions, policies, customs, and practices alleged in the paragraphs above, the District, in a manner shocking to the conscience, enabled and facilitated ongoing abuse by Duran-Tobias, placing Ms. Presley in extreme and unreasonable danger of the harms she ultimately suffered.

138.    In doing so, Defendants violated Ms. Presley's rights under the Fourteenth Amendment to the Constitution.

139.    As a result, Ms. Presley suffered the harms and damages alleged heretofore.

**COUNT IV - PURSUANT TO TITLE IX**
**PLAINTIFF, BROOKLYN PRESLEY v. THE DISTRICT**

140.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

141.    As a provider of educational programs and services receiving and services receiving federal funds, the District is required to provide the benefits of those services and programs without discrimination on the basis of sex.

142.    As alleged hereinabove, the District, by and through its faculty, administrative staff and policy makers, intentionally disregarded the rights and safety of female students, including Ms. Presley, and disregarded and failed to act on complaints of abuse at the hands of Defendant Duran-Tobias.

143.    Due to the District's intentional acts and maintenance of customs and policies alleged heretofore, Ms. Presley was subjected to gender-based harassment, abuse, and inappropriate physical contact by her teacher, suffering the relevant harms averred above.

144.    The District's conduct comprised illegal discrimination against Ms. Presley prescribed by Title IX and causing the harm Ms. Presley suffered.

**COUNT V - NEGLIGENCE**
**PLAINTIFF, BROOKLYN PRESLEY v. THE DISTRICT**

145.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

146.    In addition to the derivative and vicarious liability of the District for the negligent acts and/or omissions of its employees, agents, and/or servants, all Defendants owed a direct and

non-delegable duty to Ms. Presley to properly educate and/or train School District's administrators, teachers and staffing regarding sexual misconduct, harassment and molestation and to take all other appropriate measures to prevent sexual misconduct against the District's students.

147.   In addition to the derivative and vicarious liability of the District for the negligent acts and/or omissions of its employees, agents and/or servants, all Defendants further owed a direct and non-delegable duty to Ms. Presley to exercise reasonable care in supervising, managing and training the District's employees, agents and/or servants, including their agent and employee, Duran-Tobias.

148.    Defendants and their agents also had a duty to take appropriate action and reasonable care to protect Ms. Presley from Duran-Tobias and the effects of the sexual molestation.

149.   Defendants and their agents knew or should have known of Duran-Tobias's conduct and behavior towards Plaintiff and failed to take appropriate action.

150.   At no point did Defendants and/or their agents take appropriate steps to protect Ms. Presley being sexually assaulted by Duran-Tobias.

151.   As a result of these breaches and failures, the District's administrators, teachers and staff were uninformed and unaware of how to promptly and correctly identify ongoing sexual misconduct.

152.   Defendants had the duty to act *in loco parentis* of Ms. Presley.

153.   Defendants recklessly and wantonly breached such duty.

154.   Defendants were recklessly and wantonly negligent in allowing Ms. Presley to be repeatedly sexually attacked.

155.    Defendants were further recklessly and wantonly negligent in:

a.    failing to train District personnel regarding the proper investigation of child abuse allegations;

b.    systematically failing to conduct, or to ensure that proper and thorough investigation of child abuse allegations were conducted;

c.    systematically failing to report, or to ensure that credible allegations of child abuse were reported to the proper agencies and authorities;

d.    systematically failing to ensure District compliance with Pennsylvania's Child Protective Services Law;

e.    failing to implement or maintain procedures to screen teacher applicants for past allegations and/or incidents of child abuse;

f.    failing to recognize clear and obvious signs of grooming behaviors by Duran-Tobias'

g.    failing to terminate or otherwise discipline teachers, including but not limited to Duran-Tobias, against whom credible allegations of child abuse are made, or are known to have engaged in a pattern of abusing or harassing females students;

h.    promulgating and/or maintaining policies and/or customs, which resulted in systematic and repeated violations of Ms. Presley's Constitutional rights;

i.    deliberate indifference to complaints of minor female students and their parents regarding abusive conduct by teachers, including but not limited to Duran-Tobias;

j.    failing to remedy Duran-Tobias's misconduct with regard to Ms. Presley;

k.    failing to adequately supervise Duran-Tobias on the Chambersburg Area High School campus;

l.    failing to monitor Duran Tobias's activities despite actual knowledge that he posed a threat to Ms. Presley;

m.    failing to adequately provide training procedures for the District's employees and agents, including but not limited to, teachers and staff to recognize and prevent abuse;

n.      failing to adequately provide training for the District's employees and agents, including but not limited to, teachers and staff, to monitor and/or recognize Duran-Tobias's activities directed toward Ms. Presley;

o.      failing to provide proper training and education to the District's employees and agents, including, but not limited to, teachers and staff to recognize and/or prevent said sexual and physical misconduct;

p.      failing to take proper security measures at Chambersburg Area High School;

q.      permitting Duran-Tobias to groom Ms. Presley, including engaging in sexual conversations, inappropriate touching, and sexual activity on school grounds;

r.      creating an environment that facilitated sexual abuse by teachers;

s.      negligently managing and/or operating Defendants' school;

t.      failing to provide for the safety and protection of Ms. Presley; and

u.      failing to implement policies and procedures with regard to sexual misconduct of their employees.

156.    As a result of the outrageously shocking conduct of the Defendants, Ms. Presley has sustained severe harm, including but not limited to physical abuse, sexual molestation, severe emotional distress and anxiety, depression, post-traumatic stress disorder and social withdrawal, disruption of her ability to enjoy life's pleasures, and destruction of her sense of safety and well-being.

157.    As a result of these harms, Ms. Presley has suffered irreparably and will continue to suffer permanently, necessitating therapeutic medical and/or psychological treatments, which are likely to persist throughout her lifetime.

158.    As further result of the abuse she has suffered, Ms. Presley has suffered a significant interference with her ability to learn and otherwise enjoy the benefits of the education and educational services of the District, all to her permanent detriment.

159.    The above-referenced negligent and/or reckless conduct of Defendants was an actual cause of Ms. Presley's serious injuries.

160.    The above-referenced negligent and/or reckless conduct of Defendants was an actual cause, among other things, Plaintiffs and Ms. Presley expending various sums of money for medical care and treatment.

161.    The above-referenced negligent and/or reckless conduct of Defendants provided Duran-Tobias with unfettered and inadequately-supervised access to Ms. Presley, endangering her health, safety and well-being.

162.    The above-referenced negligent and/or reckless conduct of Defendants demonstrates outrageous and/or reckless disregard for the health, safety and well-being of Ms. Presley.

163.    The above-referenced negligent and/or reckless conduct of Defendants was willful wanton and malicious and in conscious disregard to the health and safety of Ms. Presley, allowing Ms. Presley to recover and receive punitive damages.

164.    Due to the Defendants' intentional acts and maintenance of customs and policies alleged heretofore, Ms. Presley was subjected to gender-based harassment, abuse and inappropriate sexual physical contact by her teacher, suffering the relevant harms averred above.

165.    Pursuant to 42 Pa. Con. Stat. § 8542(b)(9), Defendants are not immune from liability for their individual and/or collective negligence. The omissions and/or actions of Defendants and their agents fall squarely within the scope of Section 8542(b)(9), subjecting Defendants to liability for their individual and/or collective negligence, as well as for the negligence of their agents.

166.    Insofar as any agent(s), employee(s) or servant(s), of the District were negligent in failing to supervise or otherwise protect Ms. Presley from harm by Duran-Tobias, District is further liable for the actions and omissions of said agent(s), employee(s) or servant(s), under a theory of *respndeat superior*.

167.    Defendants conduct has been malicious, willful, outrageous, and with reckless indifference, Plaintiffs demand punitive damages against Defendants, jointly and severally.

168.    As a direct and proximate result of Defendants' intentional and indifferent negligence, Ms. Presley sustained and continues to sustain injuries for which she is entitled to be compensated, including but not limited to:

    a.    Past, present, and future physical and psychological pain, suffering and impairment;

    b.    Medical bills, counseling, and other costs and expenses for past and future medical and psychological care;

    c.    Impaired educational capacity and future earning capacity;

    d.    Attorney's fees and costs; and

    e.    Such other further relief as this Court deems just and proper.

**COUNT VI -  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(SUPPLEMENTAL JURISDICTION)**
**PLAINTIFF, BROOKLYN PRESLEY v. DURAN-TOBIAS**

169.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

170.    Duran-Tobias's purposeful, illegal, and outrageous conduct as alleged heretofore, inflicted extreme emotional distress upon Ms. Presley, which likely will require mental health and other treatment, with attendant expense to her parents.

23

**COUNT VII -  ASSAULT AND BATTERY**
**(SUPPLEMENTAL JURISDICTION)**
**PLAINTIFF, BROOKLYN PRESLEY v. DURAN-TOBIAS**

171.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

172.    Duran-Tobias's conduct comprised inappropriate conduct and assault upon Ms. Presley, a minor, and unauthorized contact with her person (battery).

173.    Ms. Presley suffered the harms and damages averred heretofore as a result.

**COUNT VIII**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(SUPPLEMENTAL JURISDICTION)**
**PLAINTIFFS, ANTHONY AND KRISTEN PRESLEY v. THE DISTRICT AND**
**DURAN-TOBIAS**

174.    Plaintiffs incorporate the above paragraphs as if fully set forth at length herein.

175.    As a result of the above, Anthony and Kristen Presley witnessed the pain, anguish and suffering of their daughter caused by Duran-Tobias' acts and the Districts negligence in failing to protect Ms. Presley, who was a minor, while the District stood in loco parentis, and have been caused to suffer permanent psychological harm, severe emotional and physical distress, depression, anxiety, mental anguish, and shock to their nerves and nervous system.

176.    Plaintiffs, Anthony and Kristen Presley, personally witnessed and endured shock resulting from the direct emotional impact from their observation of Ms. Presley's emotional and physical trauma caused by the incidents described above.

**G.    PUNITIVE DAMAGE ALLEGATION**

177.    Duran-Tobias's intentional conduct was outrageous, wanton, and committed with reckless disregard for Ms. Presley's well-being and the laws intended to protect her and similarly situated   children,   including   the   criminal   laws   of   Pennsylvania   including   school-

24

intercourse/sexual contact with student, unlawful contact with minor, endangering welfare of children and corruption of minors, thereby warranting the imposition of punitive damages.

## H.   **<u>JURY DEMAND</u>**

178.   Plaintiffs demand a jury determination of all issues so triable.

## I.   **<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs ask the Court to enter judgment in their favor against defendants, individually, jointly and separately, and to award them the following relief:

a.   General and compensatory damages against all Defendants;

b.   Punitive damages against all Defendants;

c.   Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and Title IX; and

d.   Such other relief as the Court deems just and equitable.

**FRIEDMAN SCHUMAN, P.C.**

Date:   7/31/2023

By: _____
Derek R. Layser
Melissa Paris Miller
*Attorneys for Plaintiffs*

## CERTIFICAITON

Under Federal Rule of Civil Procedure 11, by signing below, I, Derek R. Layser, attorney for Plaintiffs, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**FRIEDMAN SCHUMAN, P.C.**

Date:  July 31, 2023             By:

Derek R. Layser (Atty. # 54938)
275 Commerce Drive, Suite 210
Fort Washington, PA 19034
P: 215-690-3817
E: dlayser@fsalaw.com
*Attorney for Plaintiffs*